IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER COUNTY

| | | |
|---|---|---|
| JULIE COHEN and SAMUEL KATZ on behalf of themselves and others similarly situated, | : : : : | |
| Plaintiffs, | : : : | Case No. 4:18-cv-40045-TSH |
| v. | : : : : | |
| IMPERIALCARS.COM CORP. and SALES 360 DIRECT, LLC | : : : : | |
| Defendants. | : : / | |

## FIRST AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1.  Plaintiffs Julie Cohen ("Ms. Cohen") and Samuel Katz ("Mr. Katz") (collectively referred to as "Plaintiffs") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.  In violation of the TCPA, Imperialcars.com Corp. ("Imperial Cars") authorized pre-recorded telemarketing calls to a cellular telephone number of Ms. Cohen, using an automated dialing system. The calls were sent by Sales 360 Direct, LLC ("Sales 360") as part of a contractual arrangement with Imperial Cars to generate new customers.

3.  Imperial Cars also contacted Mr. Katz using various means of automated dialing technology, including both pre-recorded calls and automated text message advertisements, despite the fact that Mr. Katz's telephone number was on the National Do Not Call Registry.

4. The Plaintiffs never consented to receive the calls, which were placed to them for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

5. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiffs Julie Cohen is a resident of the Commonwealth of Massachusetts.

7. Plaintiff Samuel Katz was a resident of the Commonwealth of Massachusetts during a majority of the putative class period and is now a resident of the state of Maine.

8. Defendant Imperialcars.com Corp. is a Massachusetts corporation that has its principal office in this District, and a registered agent of Kevin Meehan, 8 Uxbridge Rd., cars.com, MA 01756.

9. Defendant Sales 360 Direct, LLC is a Louisiana limited liability company that has its principal place of business at 137 Girod St., Suite G in Mandeville, LA 70471. Sales 360 is engaged in substantial and not isolated business activities in the Commonwealth of Massachusetts, including, but not limited to, making pre-recorded calls to the Plaintiff Cohen for the purpose of generating new business for Imperial Cars.

## Jurisdiction & Venue

10. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants are a resident of this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiffs' claims occurred or were commissioned from here.

## The Telephone Consumer Protection Act

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry

17. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

18. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

19. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages and injunctive relief.  47 U.S.C. § 227(c)(5).

20. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii).  That agreement must also include the telephone number to which the calls may be placed.  *Id.*

## Factual Allegations

21. Imperial Cars is an automotive sales company, offering new and used vehicles for purchase.

22. To generate new sales, Imperial Cars relies on telemarketing.

23. One of Imperial Cars' strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

24. Imperial Cars uses ATDS equipment that has the capacity to store or produce telephone numbers to be called and which includes autodialers and predictive dialers.

25. Imperial Cars engages in use of this equipment because it allows for thousands of automated calls to be placed at one time, but its sales representatives, who are paid based on sales they complete, only talk to individuals who affirmatively respond.

26. Through this method, Imperial Cars shifts the burden of wasted time to the consumers it calls with unsolicited messages.

27. Furthermore, Imperial Cars enters into relationships with vendors like Sales 360 who also use automated telemarketing to originate new business for Imperial Cars.

28. Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

29. Moreover, these calls injured Plaintiffs because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiffs and the class.

Calls to Mr. Katz

30. Plaintiffs is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

31. The Plaintiff Katz's telephone number, (617) 997-XXXX, is assigned to a cellular telephone service.

32. The Plaintiff Katz's telephone number, (617) 997-XXXX, has been on the National Do Not Call Registry since January of 2013.

33. The Plaintiff Katz received pre-recorded calls from the Defendant in August of 2017 to advertise their goods and services.

34. When the call was answered, there was a lengthy pause and a click followed by silence before pre-recorded message was played, which indicated to the Plaintiff Katz that the call was made using an ATDS.

35. In fact, the use of a pre-recorded message is itself indicative of an ATDS, as it would be illogical to hand-dial a telephone call only to play a pre-recorded sales message.

36. At least two of the calls occurred on August 12, 2017 from the Caller ID number (508) 928-8597.

37. The purpose of these calls was to sell the Plaintiff Katz Imperial Cars' goods and services.

6

38. In addition to the pre-recorded telemarketing calls, the Plaintiff Katz was also contacted by automated text messages.

39. For purposes of the TCPA, a text message is recognized as a "call".

40. Below are screen shots of some of the text message solicitations the Plaintiff Katz was sent:



41. Imperial Cars sent him another unsolicited text message advertisement a month later:



42. Despite the Plaintiff Katz's lawful request, Imperial Cars did not send him a copy of the Do Not Call Policy.

43. The multiple messages and generic content of the text messages, as well as the prior automated solicitations sent by the Defendant indicate that an ATDS was used to send the text messages.

44. The Defendant did not have the Plaintiff Katz's prior express written consent to make the calls at issue.

45. To the extent Imperial Cars contends that they obtained consent or agreement from Plaintiff Katz and the putative class members for the calls at issue here, the Telemarketing

8

Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained, which Imperial Cars does not have for the Plaintiff Katz.

46. In fact, prior to the filing of the lawsuit, the Plaintiff Katz wrote to the Defendant advising it that he intended on proceeding with a formal claim and asking them to provide any evidence of consent.

47. The Defendant did not provide any evidence of consent.

Call to Ms. Cohen

48. Plaintiff Cohen is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

49. The Plaintiff Cohen's telephone number, (508) 740-XXXX, is assigned to a cellular telephone service.

50. The Plaintiff Cohen received a pre-recorded call commissioned by the Defendant on January 26, 2018.

51. Using technology designed to accomplish this, the pre-recorded call went directly to the Plaintiff Cohen's voicemail.

52. The ability to automatically send a call to the Plaintiff Cohen's voicemail is an indication of the use of an ATDS, since any hand-dialed call would necessitate that the call recipient's phone would ring.

53. In fact, the use of a pre-recorded message is itself indicative of an ATDS, as it would be illogical to hand-dial a telephone call only to play a pre-recorded sales message.

54. The purpose of the call was to sell the Plaintiff Cohen Imperial Cars' goods and services.

55. The Defendant did not have the Plaintiff Cohen's prior express written consent to make the call at issue.

56. In fact, prior to the filing of the lawsuit, the Plaintiff Cohen wrote to the Defendant advising it that she intended on proceeding with a formal claim and asking them to provide any evidence of consent.

57. The Defendant did not provide any evidence of consent.

### Imperial Cars Liability for the Call of Sales 360

58. Imperial Cars is a "person," as defined by 47 U.S.C. § 153(39).

59. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

60. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

61. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

62. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Imperial Cars may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer

> that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

63. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

64. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

65. Imperial Cars is legally responsible for ensuring that Sales 360 complied with the TCPA, even if Imperial Cars did not itself make the calls.

66. Imperial Cars knowingly and actively accepted business that originated through the telemarketing calls from Sales 360.

11

67. By hiring a company to make calls on its behalf, Imperial Cars "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

68. Despite these facts, Imperial Cars has continued to fail to adequately monitor the third parties operating on their behalf.

69. Moreover, Imperial Cars maintained interim control over the actions of the party that made the call.

70. For example, Imperial Cars had absolute control over whether, and under what circumstances, it would accept a customer.

71. Furthermore, Imperial Cars had day-to-day control over the party that made the call's actions, including the ability to prohibit it from using an ATDS or pre-recorded messages to contact potential customers of Imperial Cars.

72. Additionally, Imperial Cars restricted the geographic location that the company that made the calls could promote Imperial Cars.

73. Imperial Cars also gave interim instructions to the company that made the calls by providing the volume of calling and leads it would purchase.

74. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

75. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

76. The Class of persons Plaintiffs proposes to represent are tentatively defined as:

CLASS I

> All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

CLASS II

> All persons within the United States to whom: (a) Defendants and/or a third party contacted on a residential phone number selling their goods or services (b) that were registered on the Do Not Call Registry for more than 30 days (c) within the four years before the filing of the initial Complaint through the date of trial.

77. Excluded from the Class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

78. The class as defined above is identifiable through phone records and phone number databases.

79. The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

80. Plaintiff Cohen and Katz are a member of the Class I and Plaintiff Katz is a member of Class II.

81. There are questions of law and fact common to Plaintiffs and to the proposed Class, including but not limited to the following:

   a. Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

   b. Whether Defendants placed calls using a pre-recorded message;

   c. Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

   d. Whether Imperial Cars violated the TCPA by calling individuals on the National Do Not Call Registry;

   e. Whether the Plaintiffs and the class members are entitled to statutory damages because of Defendants' actions.

82. Plaintiffs' claims are typical of the claims of class members. Plaintiffs' claims, like the claims of the Class arise out of the same common course of conduct by Imperial Cars and are based on the same legal and remedial theories.

83. Plaintiffs are an adequate representative of the Classes because their interests do not conflict with the interests of the Class, they will fairly and adequately protect the interests of the Class, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

84. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

85. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class

treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

86. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

87. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Automated Calling provisions**

88. The foregoing acts and omissions of Imperial Cars and/or its affiliates, agents, and/or other persons or entities acting on Imperial Cars' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Class using an ATDS and/or artificial or prerecorded voice.

89. As a result of Imperial Cars' and/or its affiliates, agents, and/or other persons or entities acting on Imperial Cars' behalf's violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiffs and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

90. If the Defendants' violations are found to be knowing, the Plaintiffs and the class aware allowed a trebling of each award to $1,500 in damages.

91. Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Imperial Cars and/or its affiliates, agents, and/or other persons or entities acting on Imperial Cars' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

### Count Two:
### Violation of the TCPA's Do Not Call provisions

92. Plaintiff Katz incorporates the allegations from all previous paragraphs as if fully set forth herein.

93. The Defendant Imperial Cars violated the TCPA by (a) initiating telephone solicitations to persons whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

94. 47 C.F.R. § 64.1200(d) provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's

name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised."

95. Moreover, Defendant Imperial Cars failed to establish and implement, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA.

96. The Defendant's violations were willful and/or knowing.

**Relief Sought**

For herself and all class members, Plaintiffs requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiffs as representatives of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Imperial Cars and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Imperial Cars and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

  F. An award to Plaintiffs and the Classes of damages, as allowed by law;

  G. Leave to amend this Complaint to conform to the evidence presented at trial; and

  H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: August 17, 2018

    PLAINTIFFS,
    By their attorneys,

    */s/ Anthony I. Paronich*
    Edward A. Broderick
    Anthony I. Paronich
    Broderick & Paronich, P.C.
    99 High St., Suite 304
    Boston, MA 02110
    (508) 221-1510
    anthony@broderick-law.com

    Matthew P. McCue
    The Law Office of Matthew P. McCue
    1 South Avenue, Suite 3
    Natick, Massachusetts 01760
    (508) 655-1415
    mmccue@massattorneys.net

### CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

    */s/ Anthony I. Paronich*